John G. Balestriere*
 Email: john.balestriere@balestriere.net
Anat Maytal**
 Email: anat.maytal@balestriere.net
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2900
New York, NY 10007
Telephone: (212) 374-5401
Facsimile: (212) 208-2613
*Pro Hac Vice* application pending
*Attorneys for Plaintiffs and Class*

Joseph A. Ferrucci (186287)
 Email: jferrucci@bc-llp.com
**BROWN AND CHARBONNEAU LLP**
420 Exchange, Suite 270
Irvine, CA 92602
Telephone: (714) 505-3000
Facsimile: (714) 505-3070
*Liaison Attorneys for Plaintiff and Class*



FILED
CLERK, U.S. DISTRICT COURT

OCT - 9 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

CV09-7361 SJO (MANx)

Index No.:

**ELIZABETH KIRTS** and **RACHEL BERNHARDT**, individually and for all others similarly situated,

     Plaintiffs,

  -against-

**GREEN BULLION FINANCIAL SERVICES, LLC d/b/a/ Cash4Gold** and **DOES 1-20**,

     Defendants.

**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

# CONTENTS

NATURE OF THE CASE ........................................................................................... 4

JURISDICTION AND VENUE ................................................................................ 9

PARTIES ..................................................................................................................... 10

COMMON ISSUES PREDOMINATE .................................................................. 11

STATEMENT OF FACTS ......................................................................................... 14

    Cash4Gold's Origins and Growth .................................................................... 14

    Cash4Gold's Massive Public Relations Campaign ....................................... 15

    Consumer Complaints Against Cash4Gold ................................................... 16

    Florida Attorney General Examining Cash4Gold ........................................ 18

    Copyright Infringement Lawsuit Against Cash4Gold ................................ 18

    The First Fraud: The Company's Promise To Provide the Highest Care to the Items
        is a Lie ............................................................................................................ 19

    The Second Fraud: The "Return Policy" Does Not Exist ............................ 21

    Further Frauds: "Customer Service" Supports the Company's Other Misconduct 22

    Elizabeth Kirts Was Defrauded and Damaged by the Company ................. 24

    Rachel Bernhardt Was Defrauded and Damaged by the Company ............. 25

    Specific Allegations of Fraud ............................................................................ 27

    The Necessity for this Class Action ................................................................. 30

    Defendants Have Engaged in a Pattern of Racketeering Activity ............... 31

CLASS ACTION ALLEGATIONS ......................................................................... 35

FIRST CLAIM FOR RELIEF  (Fraudulent Inducement and Misrepresentation) .......... 41

SECOND CLAIM FOR RELIEF  (Breach of Contract) .................................... 42

THIRD CLAIM FOR RELIEF  (Unjust Enrichment) ........................................ 42

FOURTH CLAIM FOR RELIEF  (Conversion) .................................................. 43

FIFTH CLAIM FOR RELIEF  (Negligence) ........................................................ 44

SIXTH CLAIM FOR RELIEF  (Breach of Duty of Good Faith and Fair Dealing) .......... 44

CLASS ACTION COMPLAINT
SW

2

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

SEVENTH CLAIM FOR RELIEF  (Money Had and Received)........................................ 45

EIGHTH CLAIM FOR RELIEF  (Fraud) ............................................................................ 47

NINTH CLAIM FOR RELIEF  (Fraudulent Misrepresentation)...................................... 48

TENTH CLAIM FOR RELIEF  (Negligent Misrepresentation) ...................................... 49

ELEVENTH CLAIM FOR RELIEF  (Violations of Cal. Civil Code §§ 1750 et seq.) ...... 50

TWELFTH CLAIM FOR RELIEF  (Violations of Cal. Bus. & Prof. Code §§ 17200 et
        seq.) ........................................................................................................................ 53

THIRTEENTH CLAIM FOR RELIEF  (Violations of Cal. Bus. & Prof. Code §§ 17500 et
        seq.) ........................................................................................................................ 55

FOURTEENTH CLAIM FOR RELIEF  (Violations of Cal. Civil Code § 1573) .............. 57

FIFTEENTH CLAIM FOR RELIEF  (Violations of 18 U.S.C.  § 1962(c)) ........................... 58

PRAYER FOR RELIEF ........................................................................................................ 63

JURY DEMAND .................................................................................................................. 65

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiffs, by their attorneys, Balestriere Lanza PLLC and Brown and Charbonneau LLP, for their Class Action Complaint, respectfully allege as follows upon information and belief, except as to allegations concerning Plaintiffs or their counsel, which are made upon personal knowledge, and except as otherwise indicated herein:

## NATURE OF THE CASE

1.     Green Bullion Financial Services, LLC, doing business as Cash4Gold ("Cash4Gold" or the "Company"), claims that it is a professional, fair, truthful company which efficiently provides money to its customers in return for jewelry which customers send to the Company through the mail for a putatively fair appraisal and quick cash payment. On its website, Cash4Gold claims that the Company is unique "because we own our own refinery . . . which means no middlemen and that means *more cash for you*."[1] (emphasis in original)

2.     But the Company does not simply make the usual statements of puffery that it is honest, that it cuts out the middlemen, and gives customers a deal. To assuage skeptical consumers who are understandably

---

[1] Cash4Gold,Cash4Gold Buys Gold & Other Precious Metals, http://www.cash4gold.com/home/what-cash4gold-will-buy/ (last visited October 6, 2009).

CLASS ACTION COMPLAINT                                           4
SW

1    concerned about the Company's novel business idea—sending jewelry

2    through the mail to be appraised by Cash4Gold, which pays customers for

3    their jewelry—the Company makes other very specific promises.

4        3.    The *first* specific promise regards the Company's return policy.

5    Cash4Gold promises that it has a 12-day return policy for gold jewelry sent

6    to the Company in exchange for cash via check.  As Cash4Gold writes on its

7    website, its "12-day return period cannot be altered for any reason, and we

8    will not be responsible for any loss or damage of any kind if you do not

9    contact us within this return period for return of Jewelry."[2]  The Company

10   claims that if customers are dissatisfied with the appraisal of their jewelry,

11   the customers may request the return of their jewelry within 12 days from

12   the date on the checks issued to them.  Customers who choose direct

13   deposit forfeit the right to a return of their items.

14

15       4.    The *second* specific promise regards the Company's care for the

16   items sent.  The Company claims it will maintain the integrity of items sent

17   to them and hold them in the absolute highest care.  On the Company's

18   website, Cash4Gold acknowledges that customers "are shipping goods that

19

_____

20

[2] Cash4Gold, Terms & Conditions, http://www.cash4gold.com/terms-conditions/ (last visited October 6, 2009).

21

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

22

23

have the potential for holding high value."[3]  Thus, Cash4Gold promises, "We want you to know that your transaction is *safe and secure*."[4]  (emphasis in original).  In addition, the Company further promises that "the envelope you send to us holding your jewelry is strong and durable."[5]  The Company also promises that it employs a rigid and precise process to prevent fraud or theft when the items arrive at Cash4Gold's facility, claiming that "when your package arrives at our facility, the contents are photographed and compared to the itemized list that you provided.  If you choose to have your items returned, then photographs are once again taken to verify that all your items are going into the return package."[6]

5.      But these promises are lies.  In a massive scheme to defraud tens of thousands of consumers throughout the Nation, Cash4Gold breaks both of its well-publicized promises with abandon, all the while committing a series of other frauds and misconduct, including attempts to silence former employees who dare to expose this fraud.

_____

[3] Cash4Gold, America's #1 Trusted Gold Buyer, http://www.cash4gold.com/the-process/security/ (last visited October 6, 2009).

[4] *Id.*

[5] *Id*

[6] Cash4Gold, America's #1 Trusted Gold Buyer, http://www.cash4gold.com/the-process/security/ (last visited October 6, 2009).

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

6.    First, the Company repeatedly "loses" the items sent, often claiming that they were never received, frequently blaming the mail service for an absurdly high number of "lost" items even though the United States Postal Service ("USPS") has found no evidence of such negligence on its part. To fortify this fraud, the Company employs a customer service system which has the goal of frustrating customers, who eventually give up trying to recover their items after repeated phone calls and other inquiries, during which time the Company does nothing substantive to assist these customers whose items Cash4Gold has "lost".

7.    Second, and even more insidiously, Cash4Gold pretends that a return period exists simply to induce people to send jewelry to Cash4Gold. In fact, the Company has often melted the jewelry customers sent in *before* the full return period has elapsed.    In other cases, the Company purposefully mailed checks several days after the checks' issue date so that these checks will arrive after the return period has elapsed.

8.    This lack of a true return period results in significant losses to customers because the Company routinely underappraises the jewelry submitted to them. Since there is no return period, customers are forced to accept the very low appraisal value the Company provides.    These

1   appraisals are so low precisely because the Company knows that customers

2   will have no way of rejecting the "offer." The Company's claims regarding

3   the "return period" exist only to fraudulently induce customers to send

4   their jewelry to the Company, and in the process lose all or most of the

5   value of that jewelry.

6        9.    Once a customer sends in any jewelry, the Company is going to

7   take it—either by "losing" the jewelry or by providing customers a very low

8   appraisal without any choice but to "accept" that appraisal because there is

9   no return period. In either case, the Company wins, and customers lose.

10

11       10.   Plaintiffs are forced to bring this action on behalf of themselves

12  and a nationwide class of at least tens of thousands of other Americans—

13  including the dozens if not hundreds whose complaints on various websites

14  are attached to this complaint as exhibits—who were defrauded out of a

15  total of tens of millions of dollars or more.

16       11.   This class action is necessary in order to recover the value of the

17  jewelry they have lost as a result of Cash4Gold's fraudulent conduct, and to

18  compel Cash4Gold to stop defrauding tens of thousands of others in a

19  scheme whose number of victims exploded this year when the Company

20  began a media blitz starting with a February 2009 Super Bowl television

21

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

23

1    commercial.   Plaintiffs and Class Members seek compensatory damages,

2    punitive damages, attorneys' fees, costs, and any further relief this Court

3    deems just and proper.

4                         **JURISDICTION AND VENUE**

5         12.    This Court has subject matter jurisdiction over this nationwide

6    class action pursuant to 28 U.S.C. § 1332 as amended by the Class Action

7    Fairness Act of 2005 because the matter in controversy exceeds $5,000,000,

8    exclusive of interest and costs, and is a class action in which some members

9    of the Class are citizens of states different than Cash4Gold.  *See* 28 U.S.C. §

10   1332(d)(2)(A).  This Court has personal jurisdiction over Cash4Gold because

11   it advertises throughout the State of California, including especially in this

12   District: Cash4Gold's most  successful  and  pervasive  advertising  is  on

13   television, and this District contains the second largest television market in

14   the Nation, based in Los Angeles.

15

16        13.    Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Central

17   District of California because Plaintiffs reside in this District.

18

19

20

21

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

CLASS ACTION COMPLAINT
SW                                            9

23

**PARTIES**

14.    Plaintiff Elizabeth Kirts is an individual living in Glendale, California, in this District. She is a former customer of Cash4Gold.

15.    Plaintiff Rachel Bernhardt is an individual living in Granite Bay, California, in this District. She is a former customer of Cash4Gold.

16.    Defendant Cash4Gold is a Florida limited liability company with a principal place of business in Pompano Beach, Florida. Cash4Gold offers appraisal and payment via check or direct deposit for jewelry mailed to the Company through its postage-paid service. The Company asserts direct control over its business by means of training employees, developing client protocol, and by strict supervision whereby Cash4Gold monitors each employee's negotiations with customers who request a return of their jewelry.

17.    The true names and capacities (whether individual, corporate, or otherwise) of Defendants Does 1-20 are unknown to Plaintiffs. Therefore, Plaintiff sues those Defendants by such fictitious names pursuant to Cal. Civ. Proc. Code § 474. Each fictiously named Defendant is in some manner responsible for the occurrences alleged herein. Plaintiffs will seek leave of this Court to amend this Complaint to state the real names and

1  capacities of said fictitious Defendants when the same has been ascertained.

2  Plaintiffs believe that the fictiously-named Defendants proximately caused

3  their damages.

4  ## COMMON ISSUES PREDOMINATE

5  18.  Plaintiffs bring this suit as a class action pursuant to Federal

6  Rule of Civil Procedure 23 ("Rule 23") on behalf of themselves and the Class

7  of all persons similarly situated, defined in further detail below, who

8  suffered injury from Cash4Gold's unlawful practices from October 6, 2003

9  to October 6, 2009 (the "Class Period").

10  19.  This case is best litigated as a class action, and not a series of

11  individual cases, because the large number of nearly identical injuries is

12  perfectly suited to a class action.  In addition to all the other requirements of

13  Rule 23 being fully satisfied, as detailed below in the section "Class Action

14  Allegations," common questions of law and fact come disproportionately

15  into play in this case.  These common questions include, but are not limited

16  

17  to:

18  a. Did Cash4Gold make misleading representations as to the

19  nature, efficiency, fairness, and purpose of its Company, and

20  the procedures it employed to receive and assess jewelry,

21  

23

1      and to provide customers with safeguards if they disagreed

2      with the assessment?

3      b. Did Cash4Gold in fact employ an extremely careless jewelry

4      handling procedure or outright steal jewelry submitted to it,

5      such that a significant number of customers completely lost

6      the value of the items they submitted?

7      c. Did Cash4Gold claim that there was a return period, based

8      on the date of checks submitted to customers, but then

9      employ procedures which deprived customers of taking

10     advantage of this "return period?"

11

12     d. Did Cash4Gold's procedures which vitiated the return period

13     include melting submitted jewelry before checks were sent,

14     or deliberately delaying submission of checks such that

15     payment checks would be received after the "return period"

16     had expired?

17     e. Did Cash4Gold systematically and deliberately preclude its

18     customers from securing a return of the items customers sent

19     in?

20     f. Did     Cash4Gold     misrepresent     and/or     omit     material

21

22

23

1    information relating to its mailing schedule of checks sent to

2    customers in exchange for gold?

3    g.  Did Cash4Gold willfully misrepresent the ease with which

4    customers can secure return of their items?

5    h.  Did Cash4Gold employ a deliberately frustrating and

6    unhelpful "customer service" system in order to further its

7    other frauds, and wear down complaining customers, in the

8    fulfilled hope that many customers would eventually give up

9    complaining or attempting to secure a refund?

10

11    i.  Did Cash4Gold violate consumer fraud protection laws,

12    which regulate gold exchange services and protect the rights

13    of consumers who enter into contractual agreements with

14    gold exchange services?

15    j.  Did Cash4Gold engage in fraudulent inducement,

16    conversion, breach of contract, breach of good faith and fair

17    dealing, unjust enrichment, and other misconduct, all of

18    which damaged the class and benefited the Company?

19

20

21

22

23

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

CLASS ACTION COMPLAINT
SW                                                          13

1

## STATEMENT OF FACTS

2

### Cash4Gold's Origins and Growth

3
4

20.    Cash4Gold, which touts itself as "America's #1 Gold Buyer," was founded by CEO Jeff Aronson and Howard Mofshin in 2007 under the

5

name Cash4Gold LLC.[7]  The Company was originally a subsidiary of Albar

6

Precious Metal Refining, which Aronson founded in 2001 [8]   In 2008,

7

Cash4Gold spun off from its parent company and changed its name to

8

Green Bullion Financial Services, LLC, although it continued to operate

9

under the name Cash4Gold.

10

21.    Since its inception, the Company has handled nearly 800,000

11

transactions.[9]

12

22.    The Company claims that it receives 15,000 to 20,000 packages

13

each week—a staggering 780,000 to more than a million annually—and at

14

any one time has three *million* pieces of jewelry on its processing floor.

15

23.    The Company melts between 3,000 to 4,000 ounces of gold and

16

800 pounds of silver a week, allowing for revenue of $7.5 million in silver

17
18
19

[7] Cash4Gold, About Us, http://www.cash4gold.com/about-us/ (last visited October 6, 2009).

20

[8] *Id.*
[9] MarketWire.com, Top US Gold Buyer to Reach $100 Million Goal, http://www.marketwire.com/press-release/Cash4Gold-985029.html (last visited October 6, 2009).

21

CLASS ACTION COMPLAINT
SW

14

23

and between $136 million and $181 million in gold a year, according to 2008's average prices. By 2008, the Company was spending $2 million to $3 million a month on advertisements.

### Cash4Gold's Massive Public Relations Campaign

24.    In order to continue its rapid expansion—and thus further increase its massive and fraudulently earned profits—Cash4Gold has generated national exposure of its services through a costly and very effective public relations campaign.

25.    Cash4Gold achieved its national publicity by advertising heavily during prime times on television, as with its 30-second Super Bowl XLIII advertisement featuring MC Hammer and the late Ed McMahon.[10]

26.    The Company frequently attempts to control its image by asking reporters to remove negative reviews of Cash4Gold from the Internet for monetary compensation. In addition, the Company has filed a defamation suit against one its former employees, Michelle Liberis, for publicizing Cash4Gold's fraudulent conduct on ComplaintsBoard.com.[11]

---

[10] NYTimes.com, Upbeat but Sympathetic: A Fine Line for Super Bowl Ads, http://www.nytimes.com/2009/01/30/business/media/30adco.html?_r=1&scp=1&sq=cash%204%20gold%20super%20bowl&st=cse.html (last visited October 6, 2009).

[11] BusinessInsider.com, Cash4Gold Will Pay Its Critics To Do Worse on Google, http://www.businessinsider.com/2009/2/cash4gold-asks-critics-to-do-worse-on-google.html (last visited

CLASS ACTION COMPLAINT                          15
SW

1

## Consumer Complaints Against Cash4Gold

2      27.    In spite of Cash4Gold's massive public relations campaign, the

3 Company's national publicity has spurred an enormous number of

4 complaints from a huge number of dissatisfied customers who live all over

5 the country yet describe similar misconduct. All of these individuals

6 complain about the unlawful and deceptive business practices described

7 here, including deceitful advertising, lies regarding the "return period,"

8 and great numbers of "lost" items for which these individuals did not

9 receive any compensation.

10      28.    Cash4Gold has been the subject of discussion in several

11 independent Web-based consumer news and resource centers, including

12 ComplaintsBoard.com and ConsumerAffairs.com, regarding the

13 Company's fraudulent and misleading business practices. See

14 ConsumerAffairs.com complaints, attached hereto as Exhibit A. See

15 ComplaintsBoard.com complaints, attached hereto as Exhibit B. These

16 message boards have found that Cash4Gold has misled its clients by

17 engaging in the following practices:

18

19

20

21

October 6, 2009).
CLASS ACTION COMPLAINT
SW

16

22

23

- Mailing checks several days after the checks' issue dates so that customers do not have sufficient time to request a return of their jewelry;[12]

- Melting jewelry before the return period elapses;[13]

- Claiming not to have received jewelry packages in the mail;[14]

- A deliberately frustrating so-called "customer service" system which results in most individuals eventually giving up attempting to receive compensation for their "lost" or greatly underappraised jewelry.[15]

29.    Cash4Gold has also been the subject of multiple complaints with the Better Business Bureau ("BBB"), which gives the Company a C rating on a scale of A+ to F. See Better Business Bureau report on Cash4Gold, attached hereto as Exhibit C.   Less than 9% of companies registered with the BBB have a grade of a C or lower.   See Email from Norman Wright, President/CEO of Better Business Bureau of Northwest Florida, to SaraAnn Bennett (Sept. 16, 2009), attached hereto as Exhibit D.

---

[12] ComplaintsBoard.com, Cash4Gold Complaints – Rip Off,
http://www.complaintsboard.com/complaints/cash-4-gold-c87309.html (last viewed October 6, 2009).

[13] Id.

[14] Id.

[15] See The Consumerist, 10 Confessions of a Cash4Gold Employee, http://consumerist.com/5144296/10-confessions-of-a-cash4gold-employee (last visited October 6, 2009).

CLASS ACTION COMPLAINT                    17
SW

1    This rating means that the BBB recommends caution in doing business with

2    the Cash4Gold. See Better Business Bureau explanation of grades, attached

3    hereto as Exhibit E. Over the last 36 months the Better Business Bureau

4    received 368 separate complaints from Cash4Gold customers. Ex. C.

5

6       30.    Cash4Gold is clearly aware of the fraud it is perpetuating on

consumers. On March 27, 2009, Cash4Gold registered the domain name

7

8    Cash4GoldFraud.com in an attempt to prevent legitimate complaints from

being voiced online.

9

### Florida Attorney General Examining Cash4Gold

10

11       31.    The Company has not been scrutinized only by better business

and consumer advocacy websites. The Florida Attorney General's Office is

12

13    currently examining the nearly 60 complaints that the office has received

about the Company.[16]

14

15       32.    Many of the Florida Attorney General complaints claim

16    difficulty in securing a return of jewelry as promised by Cash4Gold.[17]

17

### Copyright Infringement Lawsuit Against Cash4Gold

18       33.    Cash4Gold's misconduct does not even stop with massive

19

20    [16] David Sarno, *Beneath Cash4Gold's Shiny Veneer, A Dull Reality*, Los Angeles Times, Feb. 5, 2009, *available at* http://latimesblogs.latimes.com/technology/2009/02/beneath-cash4go.html.

21    [17] Consumerist.com, Florida AG Examining Cash4Gold Complaints, http://consumerist.com/5147418/florida-ag-examining-cash4gold-complaints.html (last viewed October 6, 2009).

22

23

defrauding of consumers. Another company, CJ Environmental, Inc., sued the Company in this District for trademark infringement over the use of the term "Cash4Gold," a trademark which CJ Environmental, Inc. had been using for about two years prior to Cash4Gold's founding. See Complaint in *CJ Environmental, Inc. v. Cash4Gold, LLC*, CV08-06689 R (C.D. Cal. 2008), attached hereto as Exhibit F.

### The First Fraud: The Company's Promise To Provide the Highest Care to the Items is a Lie

34.    Cash4God's unlawful behavior can be distilled down to three specific frauds.

35.    For the first fraud, Cash4Gold explicitly promises to provide the highest care for any goods sent to its facility. It makes this promise in part because it knows that many customers are naturally hesitant to send their jewelry through the mail to a facility that may be across the country. It also makes this promise because it encourages customers to send in items which they may later decide not to sell by exercising Cash4Gold's non-existent "return policy." Consumers reasonably rely on these promises.

36.    Cash4Gold asserts its high level of care so forcefully that it has a page on its website dedicated to its security practices, where it explains its practices for safeguarding customers' gold in details, discussing even the

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    "bonded armored truck" which pick up all shipments and the "[a]rmed

2    guards and high definition security cameras" which protect all jewelry.[18]

3    Elsewhere on its website, Cash4Gold explicitly promises the "highest level

4    of security" and encourages potential customers to "learn about what we do

5    to ensure your gold and jewelry is safe every step of the way."[19]

6        37.    These explicit statements made by Cash4Gold constitute a

7    promise, one that goes *well* beyond mere puffery, that Cash4Gold will

8    exercise the highest degree of care for goods sent to it.  This process creates

9    a bailment because by the terms of Cash4Gold's "return policy," which

10   takes the place of any bargaining or ordinary appraisal system, consumers

11   may choose to reject Cash4Gold's offer for their gold at any time within a

12   12-day period and have their gold returned to them.    Consumers

13   reasonably rely on these promises.

14

15       38.    However, this high degree of care is a lie, as items sent to

16   Cash4Gold are commonly "lost."   At best, this means that Cash4Gold is not

17   exercising the high degree of care it has promised and is liable for

18

19

---

20   [18] Cash4Gold, America's #1 Trusted Gold Buyer, http://www.cash4gold.com/the-process/security/ (last
     visited October 6, 2009).

21   [19] Cash4Gold, Cash4Gold Facility, http://www.cash4gold.com/the-process/cash4gold-facility/ (last
     visited October 6, 2009).

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

23

1    negligence.  At worst, this means that Cash4Gold is intentionally stealing

2    the goods sent to it and is liable for conversion.  Additionally, whether it is

3    negligent or actually stealing, Cash4Gold has committed fraud since it

4    makes the statements regarding care intending consumers to rely on it,

5    despite their untruthfulness.

6              **The Second Fraud: The "Return Policy" Does Not Exist**

7        39.    Cash4Gold's second fraud is that the "return policy" does not

8    exist and is only a ploy to trick consumers into sending in their valuable

9    gold.

10       40.    Cash4Gold asserts that it has a 12-day "return policy," where if

11   consumers are unsatisfied with the price they are offered they may contact

12   Cash4Gold and have their jewelry returned to them.  Cash4Gold heavily

13   advertises this promise, encouraging customers to rely on it and send in

14   items they are not certain they want to sell in order to obtain a quote.  Since

15   Cash4Gold offers no other appraisal option, this is the only way that

16   customers may obtain a valuation of their jewelry from the Company.

17

18       41.    However, this "return policy" is a lie.    Importantly, it is

19

20

21

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

22

23

measured from the date on the check sent to consumers.[20]    Then Cash4Gold, as a matter of company policy or practice, routinely issues the checks, sets them aside, and mails them out days later so that customers do not receive their checks until *after* the 12-day return window has *already passed*.  Since this means that the "return policy" for all practical purposes simply does not exist, customers are completely unable to reject Cash4Gold's offer or to have their jewelry returned to them.  In fact, in many cases Cash4Gold actually melts down jewelry before the "return period" has even passed, since it *knows* that due to its mailing schedule, customers literally have no way to successfully exercise the "return policy."

42.    Customers are also denied access to the promised "return policy" by Cash4Gold's practice of systematically either stealing jewelry that is sent to them or negligently allowing its theft through security procedures far below both reasonable standards and those standards that they explicitly promise to consumers.

### Further Frauds: "Customer Service" Supports the Company's Other Misconduct

43.    To support and disguise the two major frauds of stealing

_____

[20] Cash4Gold, Frequently Asked Questions, http://www.cash4gold.com/faqs/ (last visited October 6, 2009).

CLASS ACTION COMPLAINT
SW

22

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    customers' jewelry and completely fabricating the existence of a return

2    policy, Cash4Gold utilizes a "customer service" staff which is deliberately

3    frustrating and openly lies to the Company's customers.[21]

4        44.    These customer service representatives are specially trained in

5    several techniques to mislead consumers who call in, including claiming to

6    speak to a "supervisor" when they do not, offering to "bump up a melt

7    date" when no such thing is done, tell consumers that calls are recorded

8    when they are not in an attempt to intimidate them, and other related

9    tactics.[22]

10       45.    These customer service representatives not only provide vital

11   support to Cash4Gold's overall fraud which they use to unlawfully obtain

12   gold from consumers, they also illustrate the extent to which the

13   Company's institutional culture is corrupt to its very core, designed at all

14   levels to commit fraud.

---

[21] The Consumerist, 10 Confessions of a Cash4Gold Employee, http://consumerist.com/5144296/10-confessions-of-a-cash4gold-employee (last visited October 6, 2009).

[22] *Id.*

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

**Elizabeth Kirts Was Defrauded and Damaged by the Company**

46. Based on the Company's representations, Plaintiff Kirts sent sterling silver and gold jewelry to Cash4Gold in its Refiner's Return Pak.

47. Abiding by with Company policy, Kirts sent an email to Cash 4Gold at quotes@Cash4Gold.com, explaining that she wanted to get a quote of her jewelry's value before the Company mailed her a check in exchange for her jewelry.

48. Contrary to the Company's promises of quick services throughout its website, it took about three weeks for Kirts to receive a quote of 56 cents for her jewelry, after several phone calls and emails during that period.

49. Dissatisfied with the incredibly paltry quote, Kirts tried calling the Company several times before finally being able to reach it to request a return of her jewelry.

50. Again, despite the Company's advertisement of swift services, Kirts only received her jewelry a month after she was able to request the return, and even then, the package was missing the most expensive item.

51. Kirts has been unable to contact Cash4Gold to retrieve her missing item and has lost the value of this item.

**Rachel Bernhardt Was Defrauded and Damaged by the Company**

52.    Plaintiff Bernhardt sent in a request for a Cash4Gold Refiner's Return Pak on December 16, 2008.

53.    Bernhardt mailed in her jewelry to the Company directly through the USPS using the Cash4Gold Refiner's Pak on January 2, 2009.

54.    On January 10, 2009, Bernhardt emailed Cash4Gold's customer services department inquiring about when she could expect payment for the gold jewelry that she had sent to the Company.

55.    On January 10, 2009, Bernhardt received a reply to her inquiry from a person identifying herself as Samantha at info@Cash4Gold.com. The reply said that the Company had not yet received Bernhardt's package and acknowledged that it takes 7-10 business days for packages to arrive at the facility.

56.    On January 18, 2009, 16 days after Bernhardt had sent her package to Cash4Gold, Bernhardt submitted yet another email inquiry regarding the Company's receipt of her package.

57.    On January 19, 2009, Bernhardt received a reply from Samantha at info@Cash4Gold.com.    Samantha stated that the Company had not

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    received the package and that she feared the package had been lost in

2    transit by the USPS.

3        58.    Samantha    directed    Bernhardt    to    the    USPS    website    and

4    instructed Bernhardt to file a complaint and to fax to Cash4Gold the USPS

5    office's reply in addition to a detailed notarized and itemized list of items

6    Bernhardt had sent to the Company. Samantha stated that all claims would

7    be processed and paid out 30 days after the receipt of Bernhardt's claim

8    information.

9

10        59.    On January 19, 2009, in response to Bernhardt's inquiry of

11    whether packages to Cash4Gold have been lost by the USPS before,

12    Samantha definitively stated that Bernhardt's package "never arrived" at

13    the Cash4Gold facility and "was lost in transit by the USPS." Samantha

14    explained that in such cases, the Company asks customers to file an

15    insurance claim so that the Company may pay for the items even though

16    the Company did not receive them.

17        60.    On January 19, 2009, Bernhardt filled out and emailed a

18    complaint form to the USPS.

19        61.    On January 20, 2009, the USPS confirmed receipt of the

20    complaint.    But Bernhardt never received any compensation for her loss,

21

22    CLASS ACTION COMPLAINT                    26
      SW

23

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    which she estimates to be $3,623.

2                      **Specific Allegations of Fraud**
                    **1. Who Made the Statement or Omitted to Speak?**

3    62.    Cash4Gold makes false statements and representations by

4    repeatedly advertising, on its website and elsewhere, that it upholds a 12-

5    day return policy for jewelry received at its facility in exchange for cash and

6    that it maintains the utmost care in its handling of items sent to it.    In

7    addition, Cash4Gold dishonestly attributes loss of jewelry sent in their

8    Refiner's Return Pak to the United States Postal Service.    Moreover,

9    Cash4Gold consistently fails to uphold its return policy and send back

10   jewelry intact, as the Company did in the case of Plaintiff Kirts.

11

12                  **2. What is the Fraudulent Statement or Omission**

13   63.    Cash4Gold falsely asserted and/or otherwise misrepresented

14   that it mails checks in return for jewelry to customers immediately after the

15   checks are issued so that customers may participate in their return policy. It

16   also falsely asserted that if a return for jewelry item is requested, the

17   Company will return the jewelry intact.  The Company also misrepresented

18   that it provides a secure, state of the art facility to which customers can send

19   their jewelry and that it maintains the utmost care in its handling of items

20   sent to it.

21

23

### 3. When and Where did the Speaker Make the Fraudulent Statement or Omit to Speak

64.     Cash4Gold   has   continuously   asserted   such   fraudulent statements and representations in postings on its website.   In addition, Cash4Gold made fraudulent statements and representations in email and telephone communications to Plaintiffs and other customers, including numerous Class Members, regarding Cash4Gold's return policy, security guarantees, and standards of care, all during the Class Period.

### 4. To Whom did the Speaker Make the Fraudulent Statement or Omit to Speak

65.     In     its     misrepresentations,     Cash4Gold     addressed     all Cash4Gold.com website users and viewers.     Specifically, Cash4Gold directed these falsehoods to individuals, including Plaintiffs and other class members, who were considering sending in jewelry for some cash during an economic recession.

### 5. Why Statements or Omissions were Misleading or Fraudulent

66.     Cash4Gold intentionally misled Cash4Gold.com website users and customers and induced participation in jewelry exchange for cash services on false pretenses.   Had Cash4Gold not made these statements, Plaintiffs and other Class Members would not have sent in their jewelry in hopes for cash.

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

67.    Specifically, Cash4Gold asserted that customers dissatisfied with the Company's quote of their jewelry would be able to request a return of their items according to a 12-day return policy.    The Company's systematic practice of mailing in checks well after the date that they are issued, however, precludes customers from securing returns.

68.    Furthermore, Cash4Gold claimed that its Refiner's Return Pak would arrive at a secure, carefully monitored facility and that all jewelry requested for a return according to the 12-day return policy would be sent back to customers intact after being subject to the highest standard of care, which was not the case with Plaintiffs and the many others in the Class, including those who filed complaints.

### 6. Why it Was Reasonable for Class Members to Believe the Fraudulent Statements or to Not Question the Omissions

69.    Barring any *obvious* fraud—and there is none here—it is reasonable for a consumer to rely upon Cash4Gold's representations. Moreover, since Cash4Gold is a well-known company, a consumer can rely on the integrity of the market to ferret out obvious fraud.    To reasonable responsible consumers, like Plaintiffs and members of the Class, it appeared that Cash4Gold was telling the truth.    Accordingly, it was reasonable for Plaintiffs and other class members to rely on Cash4Gold's statements, in

CLASS ACTION COMPLAINT
SW

29

particular Cash4Gold's express accommodation for customers dissatisfied with the Company's quote of their jewelry with a 12-day return policy, Cash4Gold's promise of a secure, carefully monitored facility to which customers can send their jewelry, and Cash4Gold's promise that it would exercise the utmost care in its handling of items sent to it.

**7. The Common Course of Conduct of Fraud and Reliance Upon It**

70.    Cash4Gold has engaged in one common fraudulent scheme of misrepresentation: it makes the same fraudulent statements about its return policy, the quality of its services, and the standard of care it exercised to all website viewers, users, and customers.    Everyone who participates in Cash4Gold's services reasonably relies on these uniformly made statements.

**The Necessity for this Class Action**

71.    Despite being the target of a trademark infringement lawsuit as well as the subject of numerous consumer fraud complaints at several independent consumer resource centers, Cash4Gold has thus far largely avoided liability for its fraudulent and deceptive business practices.  This is because the majority of Cash4Gold's customers simply do not have the time, energy, or resources to initiate a lawsuit against the Company.

72.    Indeed, the very nature of the Class herein—financially strained individuals who are in need of the extra cash that Cash4Gold promises to

provide for their unwanted jewelry—virtually ensures that dissatisfied Cash4Gold customers will not take legal action against the Company, simply because the demands of their economic situation preclude them from doing so. Further, the amount of damages sustained by each Cash4Gold customer is simply not large enough for these customers to justify their hiring an attorney to commence a lawsuit against Cash4Gold. Finally, while Cash4Gold customers know that they have been defrauded, many undoubtedly feel reluctant to admit that they participated in a mail-in gold exchange service and that they have been duped by one, thereby hesitating to take legal action against Cash4Gold.

### Defendants Have Engaged in a Pattern of Racketeering Activity

73.    Defendants' conduct rises to the level of a pattern of racketeering activity through which Plaintiffs and Class Members were proximately harmed.

74.    Cash4Gold, its advertising firms, broadcasting stations, cable companies, the Does, and consumers constituted an enterprise which existed for a wholly legitimate purpose. That purpose was to advertise a legitimate service, one where consumers could send in their unwanted gold in exchange for money according to certain terms, and then provide that

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1   service.

2       75.    Cash4Gold and the Does, however, corrupted the enterprise to

3   their own malignant ends by effectively ending Cash4Gold's return policy

4   in secret so that consumers were deprived of a material part of any bargain

5   they entered into with the Company, and in a significant number of cases

6   blatantly stealing goods sent to it.

7       76.    Defendants' actions corruptly turned the entire enterprise into a

8   scheme to commit mail and wire fraud for Defendants' own profit and to

9   the detriment of consumers, which included Plaintiffs and Class Members.

10      77.    Defendants pulled its advertising firms unwittingly into the

11  circle of fraud and made them unknowing accomplices to its crime by

12  tricking them into making television commercial and other advertisements

13  which contained material misstatements of fraud.

14

15      78.    Defendant pulled the broadcasting stations and cable companies

16  unwittingly into the crime by tricking them into airing fraudulent

17  statements which they surely would have never aired had they known their

18  true nature.

19      79.    Even if only each distinct advertisement, rather than each

20  communication of fraud, constituted a distinct crime, Cash4Gold issued

21

22

23

1    numerous television advertisements during the Class Period, meaning there

2    were a large number of predicate criminal acts committed by Defendants,

3    all of which constitute mail fraud, wire fraud, or both, in violation of 18

4    U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1346 (definition of

5    "scheme or artifice to defraud").

6        80.    Defendants' actions also constituted bank fraud, in violation of

7    18 U.S.C. § 1344, by executing a scheme to defraud financial institutions.

8    Upon information and belief, Cash4Gold has obtained financing from a

9    bank or other financial institution to fund its business.  Any such financing

10   was based on the explicit or implicit assurance that Cash4Gold was not

11   using the funds in furtherance of an illegal purpose.  By obtaining funds

12   from a financial institution under false pretenses in this way, Cash4Gold

13   and Does thus involved the bank or banks as well into their circle of lies,

14   obtaining the funds through this separate though related scheme to

15   defraud.

16

17       81.    Defendants' actions also constituted interstate transportation of

18   stolen property, in violation of 18 U.S.C. § 2314, which explicitly prohibits

19   the interstate transportation of any goods obtained by fraud.  Upon

20   information and belief, after melting down the fraudulently obtained gold

21

22

23

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

CLASS ACTION COMPLAINT
SW

33

1    from consumers, Cash4Gold sells it to buyers, including those outside the

2    state of Florida, and has done so on numerous occasions.    Such actions

3    constitute a clear violation of 18 U.S.C. § 2314.

4        82.    Finally, Defendants' actions constituted theft from interstate

5    shipment, in violation of 18 U.S.C. § 659.  Cash4Gold has blatantly stolen

6    items of value from all members of the Lost Jewelry Subclass, those whose

7    items Cash4Gold "lost" (a precise definition of this subclass is noted below).

8    Many of those consumers, including Plaintiff Kirts and Plaintiff Bernhardt,

9    live outside of Florida.  Such theft from the vehicle transporting these goods

10    thus constitutes a clear violation of 18 U.S.C. § 659. Through these acts of

11    wire fraud, mail fraud, bank fraud, interstate transportation of stolen

12    property, and theft from interstate shipment, in violation of 18 U.S.C. §§

13    659, 1341, 1343, 1344, 1346, and 2314, Defendants' actions constitute

14    conspiracy to commit a violation of the Racketeer Influenced and Corrupt

15    Organizations (RICO) Act, 18 U.S.C. § 1962(c).

16

17

18

19

20

21

1

## CLASS ACTION ALLEGATIONS

2    83.   Plaintiffs bring this class action pursuant to Rule 23 in their

3  representative capacities on behalf of themselves and the Class of all

4  persons similarly situated, during the Class Period, defined as follows:

> All consumers who submitted jewelry to the Company and were damaged because the Company did not follow its promised, advertised procedures, including high standard of care handling procedures, and fair appraisal and return period procedures.

8    84.   Plaintiffs Kirts and Bernhardt additionally bring this action on

9  behalf of themselves and a subclass ("the Lost Jewelry Subclass"),

10  consisting of a subset of the above defined Class, in their representative

11  capacities on behalf of themselves and the Lost Jewelry Subclass of all

12  person similarly situated during the Class Period, defined as follows:

> All individuals who submitted jewelry to the Company and were damaged because the Company claimed it never received the jewelry or that the jewelry was otherwise lost, resulting in a complete loss of the value of the items submitted to the Company.

Kirts and Bernhardt are the "Lost Jewelry Subclass Lead Plaintiffs."

17    85.   **Numerosity**. Although the exact number of Class Members is

18  presently unknown, Plaintiffs are informed and believe and thereon allege

19  that the Class will number at least several hundred consumers.

20

21

CLASS ACTION COMPLAINT
SW

35

23

1    Unquestionably, the members of the Class are so numerous and reside

2    throughout the United States that joinder of all members is impracticable.

3        86.    **Commonality**.  A substantial pool of questions of law and fact

4    exists that is common to the Class.  Such common questions include, but are

5    not limited to:

6        k. Did Cash4Gold make misleading representations as to the

7           nature, efficiency, fairness and purpose of its Company, and

8
9           the procedures it employed to receive and assess jewelry,

10           and to provide customers with safeguards if they disagreed

11           with the assessment?

12        l. Did Cash4Gold in fact employ an extremely careless jewelry

13           handling procedure or outright steal jewelry submitted to it,

14           such that a significant number of customers completely lost

15           the value of the items they submitted?

16        m. Did Cash4Gold claim that there was a return period, based

17           on the date of checks submitted to customers, but then

18           employ procedures which deprived customers of taking

19           advantage of this "return period?"

20

21

CLASS ACTION COMPLAINT
SW
              36

23

n. Did Cash4Gold's procedures which vitiated the return period include melting submitted jewelry before checks were sent, or deliberately delaying submission of checks such that payment checks would be received after the "return period" had expired?

o. Did Cash4Gold systematically and deliberately preclude its customers from securing a return of the items customers sent in?

p. Did Cash4Gold misrepresent and/or omit material information relating to its mailing schedule of checks sent to customers in exchange for gold?

q. Did Cash4Gold willfully misrepresent the ease with which customers can secure return of their items?

r. Did Cash4Gold employ a deliberately frustrating and unhelpful "customer service" system in order to further its other frauds, and wear down complaining customers, in the fulfilled hope that many customers would eventually give up complaining or attempting to secure a refund?

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

s. Did Cash4Gold violate consumer fraud protection laws, which regulate gold exchange services and protect the rights of consumers who enter into contractual agreements with gold exchange services?

t. Did Cash4Gold engage in fraudulent inducement, conversion, breach of contract, breach of good faith and fair dealing, unjust enrichment, and other misconduct, all of which damaged the class and benefited the Company?

87. **Typicality**. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs are ordinary Cash4Gold customers who, along with all Class Members, have been injured by the same wrongful and unlawful acts and practices of Defendants as alleged herein.

88. **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiffs have engaged competent counsel experienced in the prosecution of complex and class litigation. Moreover, the Lost Jewelry Subclass Lead Plaintiffs will fairly and adequately protect the interests of the Lost Jewelry Subclass. The

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1  Lost Jewelry Subclass Lead Plaintiffs have no interests that are antagonistic

2  to or in conflict with the interests of the Lost Jewelry Subclass as a whole.

3      89.    A class action is superior to the alternatives, if any, for the fair

4  and efficient adjudication of the controversy alleged herein, because such

5  treatment will permit a large number of similarly situated persons to

6  prosecute their common claims in a single forum simultaneously,

7  efficiently, and without duplication of evidence, effort, and expense that

8  numerous individual actions would engender.  This action will result in the

9  orderly and expeditious administration of Class claims.    Uniformity of

10  decisions will be assured, thereby avoiding the risk of inconsistent and

11  varying determinations.

12

13      90.    Plaintiffs know of no difficulty that will be encountered in the

14  management of this litigation which would preclude its maintenance as a

15  class action.

16      91.    **Maintainability.**  This action is properly maintainable as a class

17  action for the prior independent reasons and under the following portions

18  of Rule 23:

19          a.    The individual amounts of restitution involved, while

20              not insubstantial, are generally so small that individual

21

22

23

actions or other individual remedies are impracticable and litigating individual actions would be too costly;

b.   Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation;

c.   Defendants have acted or refused to act on grounds generally applicable to the Class and any subclasses, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole, and any subclasses; and

d.   Individual actions would unnecessarily burden the courts and waste judicial resources.

92.   Questions of law and fact common to members of the Class and any subclasses predominate over any questions affecting only individual members.

93.   Notice to the members of the Class may be accomplished inexpensively, efficiently, and in a manner best designed to protect the rights of all Class Members.

94.    California, as the Nation's most populous state, is a center of gravity for this action such that it is appropriate and consistent with existing law to certify a nationwide class of consumers applying California law.  Not only do more than one in every ten Americans live in California, but significant media markets, including those based in Los Angeles, San Francisco, San Jose, San Diego, and Sacramento, are located in California and were major venues through which the Company issued its false advertising to dupe consumers.

95.    Certification of a nationwide class under the laws of California is appropriate because:

a. Defendants conduct substantial business in California;

b. Almost certainly more Class Members, including the Plaintiffs that have initiated this action, reside in California than in any other state.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Inducement and Misrepresentation)

96.    Plaintiffs repeat and reallege each allegation of paragraphs 1 through 94 above as if fully set forth herein.

97.    As alleged above, Cash4Gold knowingly made material misrepresentations on their website and in their television advertisements.

98.    Plaintiffs and Class members relied upon Cash4Gold's material misrepresentations to their detriment, and entered into business with Cash4Gold.

99.    As a result of Cash4Gold's fraudulent conduct, Plaintiffs and class members suffered monetary damages and other losses.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

100.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 98 of this Complaint as if fully set forth herein.

101.    By failing to mail checks immediately after the date that they were issued, and precluding its customers from securing a return of their jewelry per Company terms, Cash4Gold breached the Company's contract with Plaintiffs.

102.    As a result of Cash4Gold's breach of contract, Plaintiffs have been injured in the amount of their jewelry's value.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

103.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 98 of this Complaint as if fully set forth herein.

104.    Considerations of justice and good conscience preclude

allowing Cash4Gold to retain any profits it received in the form of jewelry from any Class members. These class members were fraudulently induced to enter into business with Cash4Gold, and, in turn, lose their jewelry, the value for which far exceeds their reasonable value as appraised by Cash4Gold.

## FOURTH CLAIM FOR RELIEF
### (Conversion)

105. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 103 of this Complaint as if fully set forth herein.

106. Cash4Gold has unlawfully exercised dominion over the property of another through its outright theft of jewelry entrusted to its care by Plaintiffs and Class Members.

107. At the time Cash4Gold unlawfully exercised dominion over the goods of Plaintiffs and Class Members, Plaintiffs and Class Members owned the goods or had the right to possess them.

108. Cash4Gold committed its conversion through wrongful act or disposition of property rights.

109. Plaintiffs and Class Members were damaged by Cash4Gold's conversion.

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1

## FIFTH CLAIM FOR RELIEF
### (Negligence)

2

110.  Plaintiffs repeat and reallege the allegations contained in

3

paragraphs 1 through 108 of this Complaint as if fully set forth herein.

4

111.  Cash4Gold had a duty to exercise reasonable care over the

5

goods entrusted to it by Plaintiffs and Class Members.  Cash4Gold had the

6

duties inherently expected of a company holding the goods of another, and

7

explicitly assumed further duties through detailed promises regarding its

8

security procedures on which it intended consumers to rely.

9

10

112.  Cash4Gold breached its duty by exercising security practices so

11

lax that goods were frequently stolen from its care.

12

113.  Cash4Gold's breach was the actual and proximate cause of

13

injury to Plaintiffs and Class Members.

14

114.  Plaintiffs and Class Members suffered damages as a result of

15

Cash4Gold's breach of its duty to them.

16

## SIXTH CLAIM FOR RELIEF
### (Breach of Duty of Good Faith and Fair Dealing)

17

115.  Plaintiffs repeat and reallege the allegations contained in

18

paragraphs 1 through 113 of this Complaint as if fully set forth herein.

19

20

116.  New York law imposes a duty of good faith between the service

21

provider and the customer.

CLASS ACTION COMPLAINT
SW

44

22

23

117.  Through the misrepresentations, material omissions, and failures to perform detailed above, Cash4Gold has violated its duties to Plaintiffs and Class Members of good faith and fair dealing.

118.  Plaintiffs and Class Members have suffered damages as a result of said breaches in the form of loss of the value of their jewelry.

119.  In breaching its duty of good faith with Plaintiffs and Class Members, Cash4Gold acted maliciously, oppressively, and with the intent to defraud Plaintiffs and Class Members.

120.  Plaintiffs and Class Members are therefore entitled to recover punitive damages.

**SEVENTH CLAIM FOR RELIEF**
**(Money Had and Received)**

121.  Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 119 of this Complaint as if fully set forth herein.

122.  This claim for relief is brought by Plaintiffs individually and on behalf of all other Class Members.

123.  As a result of the conduct alleged herein, Cash4Gold has improperly received monies from Plaintiffs and Class Members that Cash4Gold was not legally entitled to receive.

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

124. Plaintiffs and the members of the Class are in privity with Cash4Gold.

125. Plaintiffs and the members of the Class have a claim for improperly seized jewelry.

126. Equity and good conscience require that Cash4Gold pay over such additional monies, described above, to Plaintiffs and members of the Class.

127. As a direct and proximate result of Cash4Gold's inappropriate practices, Plaintiffs and members of the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement in the amount necessary to restore them to the position they would have been in, had Cash4Gold not improperly collected and retained the Plaintiffs' and Class Members' jewelry.

128. Plaintiffs and Class members seek to obtain a pecuniary benefit for the Class in the form of reimbursement, restitution, and disgorgement from Defendant.

129. Plaintiffs' counsel are entitled to recover their reasonable attorney's fees and expenses as a result of the conference of a pecuniary

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    benefit on behalf of the Class and will seek an award of such fees and

2    expenses at the appropriate time.

3                              **EIGHTH CLAIM FOR RELIEF**
                                        **(Fraud)**

4

5        130. Plaintiffs repeat and reallege the allegations contained in

6    paragraphs 1 through 128 of this Complaint as if fully set forth herein.

7        131. By telling Plaintiffs that the Company would mail checks in

8    exchange for their jewelry promptly and would enable Plaintiffs to request

9    a return of their jewelry within a 12-day return period, Cash4Gold made a

10   misrepresentation of a material fact.   Cash4Gold intended to deceive

11   Plaintiffs, and Plaintiffs believed and justifiably relied on Cash4Gold's

12   statement and were induced to participate in Cash4Gold's services, in

13   reliance on Cash4Gold's return policy.  As a result of this reliance, Plaintiffs

14   have suffered monetary loss, include loss of the value of their jewelry, for

15   which they must be compensated.

16       132. As a result of Cash4Gold's fraudulent misrepresentation,

17   Plaintiffs are entitled to declaratory and compensatory relief, as well as

18   punitive damages in an amount to be determined at trial.

19

20

21

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

CLASS ACTION COMPLAINT
SW                                    47

23

## NINTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation)

133.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 131 of this Complaint as if fully set forth herein.

134.   Cash4Gold defrauded consumers by using deceptive conduct to persuade consumers to participate in Cash4Gold's services, including its 12-day return policy.

135.   Cash4Gold used false advertising to misrepresent their terms of agreement, claiming that the Company will allow customers to ask for a return of their jewelry within a 12-day return period.

136.   The key element of the return policy is its inherent promise to provide Plaintiffs with 12 full days to request a return of their items.

137.   Cash4Gold misled Plaintiffs: Cash4Gold mailed checks several days after the date that they were issued, thereby precluding Plaintiffs from requesting a return of their jewelry before the return period per Company terms elapsed.

138.   Cash4Gold's advertisement of a 12-day return policy constitutes a deceptive and fraudulent action.

139.   Cash4Gold's unlawful, fraudulent, and unfair conduct injured Plaintiffs and Class Members.

CLASS ACTION COMPLAINT
SW

48

## TENTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

140.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 138 of this Complaint as if fully set forth herein.

141.   As described more fully above, Cash4Gold made common written and/or oral misrepresentations of material fact and failed to disclose material information to Plaintiffs and Class Members concerning the practical implementation of the Company's return policy.

142.   Cash4Gold falsely represented to Plaintiffs and Class Members that they would receive their checks promptly upon the Company's receipt of their items and that Plaintiffs would be able to request a return of their items within 12 days of receiving checks for their jewelry.

143.   Cash4Gold made such representations in a careless and reckless manner.

144.   Cash4Gold knew and should have known that Plaintiffs and Class Members would rely on such false and misleading representations of the Company's return policy.

145.   Plaintiffs and Class Members did, in fact, rely on Cash4Gold's false and misleading representations of the Company's return policy to their detriment.

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    146.   Cash4Gold owed Plaintiffs and Class Members a duty of care.

2    147.   Cash4Gold breached the duty of care, which was owed Plaintiff

3    and Class Members.

4    148.   Plaintiffs and Class Members suffered monetary damages and

5    other losses as a result of Cash4Gold's fraudulent conduct.

6
     ## ELEVENTH CLAIM FOR RELIEF
7    (Violations of Cal. Civil Code §§ 1750 et seq.)

8    149.   Plaintiffs repeat and reallege the allegations contained in

9    paragraphs 1 through 147 of this Third Amended Complaint as if fully set

10   forth herein.

11   150.   Plaintiffs bring this claim individually and on behalf of the Class

12   against Cash4Gold.

13   151.   At all times relevant hereto, Plaintiffs and each Class member

14   were a "consumer," as defined in Civ. Code § 1761(d).

15   152.   At all times relevant hereto, Cash4Gold's service, the mail-in

16   policy through which it received jewelry in exchange for case, constituted a

17   "service," as defined in Civ. Code § 1761(b).

18   153.   At all times relevant hereto, Defendant Cash4Gold constituted a

19   "person," as defined in Civ. Code § 1761(c).

20

21

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

CLASS ACTION COMPLAINT                    50
SW

23

154.   At all times relevant hereto, Plaintiffs' and each Class Member's use of the Refiner's Pak for sending jewelry constituted a "transaction," as defined in Civ. Code § 1761(e).

155.   Cal. Civ. Code § 1770(a) provides in relevant part that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or what results in the sale or lease of goods or services to any consumer are unlawful: . . .

> (5)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. . .
>
> (9) Advertising goods or services with the intent not to sell them as advertised. . . .
>
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

156.   Cash4Gold has violated and continues to violate Civ. Code § 1770(a)(5) by advertising that it adheres to a 12-day return policy when, in fact, no such policy exists and the Company systematically precludes such a policy from taking effect.

157.   Cash4Gold has violated and continues to violate Civ. Code § 1770(a)(9) by advertising in its Terms and Conditions that it upholds a 12-day return policy.   In fact, Cash4Gold had no intent to honor this promise and systematically mailed in checks days after they were issued to prevent customers from utilizing the Company return policy as stated in public communications.

158.   Cash4Gold has violated and continues to violate Civ. Code § 1770(a)(16) by representing that it adheres to a 12-day return policy, as represented previously, when in fact no such policy exists.

159.   Cash4Gold has also violated and continues to violate Civ. Code § 1770(a)(16) by representing that its mailing of checks and return services were provided in accordance with the previous representation that customers have 12 days to request return of their jewelry.   In fact, Cash4Gold mailed in checks too late to allow for customers to request a return of their jewelry within the advertised return period.

160.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Cash4Gold from engaging in the methods, acts, and practices alleged herein.

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    161.    Pursuant to Civ. Code § 1782, Plaintiffs have given notice to

2    Cash4Gold of their intention to file an action under Civ. Code §§ 1760 et

3    seq. unless Cash4Gold corrects or otherwise rectifies the consumer fraud

4    resulting from the misrepresentation and fraudulent practice.    A copy of

5    Plaintiff's CLRA notice to Cash4Gold is attached hereto as Exhibit G.

6    162.    Also pursuant to Cal. Civ. Code § 1782, if Cash4Gold does not

7    "correct or otherwise rectify" its illegal acts within 30 days, Plaintiffs intend

8    to amend this Complaint to add claims for:

9

10        a.  actual damages;
         b.  restitution of money to Plaintiffs and Class members;
11        c.  punitive damages;
12        d.  attorneys' fees and costs; and
13        e.  other relief that this Court deems proper.

14    **TWELFTH CLAIM FOR RELIEF**
     **(Violations of Cal. Bus. & Prof. Code §§ 17200 et seq.)**
15

16    163.    Plaintiffs repeat and reallege the allegations contained in

17    paragraphs 1 through 161 of this Complaint as if fully set forth herein.

18    164.    Plaintiffs bring this claim individually and on behalf of the Class

19    against Cash4Gold.

20

21    CLASS ACTION COMPLAINT                      53
     SW

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

23

165.  Cal. Bus. & Prof. Code §§ 17200 et seq. prohibits all unlawful, unfair, or fraudulent business practices and acts.  Said statute is liberally construed to protect the public.

166.  In doing the acts alleged herein, Cash4Gold engaged and continues to engage in an unlawful, unfair, and deceptive business practice in violation of Cal. Bus.  & Prof. Code §§ 17200 et seq.   Cash4Gold's wrongful conduct alleged herein is part of a pattern or generalized course of conduct that occurred and continues to occur in the ordinary course of Cash4Gold's business.   Thus, Cash4Gold's conduct impacts the public interest.

167.  Cash4Gold's acts and practices have and are likely to deceive consumers.

168.  Cash4Gold's acts and practices are unlawful because they violate Civ. Code §§ 1572, 1573, 1709, 1710, 1770(a)(5), 1770(a)(9), 1770(a)(13), and 1770(a)(16); Cal. Bus. & Prof. Code §§ 17500 et seq.; and 18 U.S.C. §§ 659, 1341, 1343, 1344, 1346, 1961, and 2314.   Specifically, Cash4Gold made false and deceptive representations that it upholds a 12-day return policy and that the facility to which it receives mail-in jewelry is secure and carefully monitored.  Such claims are material and substantial.

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    169.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs, on behalf

2    of themselves and all members of the Class, seek an order of this Court

3    permanently enjoining Cash4Gold from continuing to engage in its unfair

4    and unlawful conduct as alleged herein.   Plaintiffs also seek an order

5    awarding full restitution of all monies wrongfully obtained.

6
                            **THIRTEENTH CLAIM FOR RELIEF**
7                   **(Violations of Cal. Bus. & Prof. Code §§ 17500 et seq.)**

8    170.   Plaintiffs repeat and reallege the allegations contained in

9    paragraphs 1 through 168 of this Complaint as if fully set forth herein.

10    171.   Plaintiffs bring this claim individually and on behalf of the Class

11    against Cash4Gold.

12    172.   During the Class Period, Cash4Gold marketed, advertised, and

13    provided to the public services for jewelry in exchange for cash.

14    173.   Cash4Gold has engaged in the advertising and marketing

15    alleged herein with the intent to directly or indirectly induce the

16    participation of customers in its jewelry exchange for cash services.

17
18    174.   Cash4Gold's advertisements and marketing representations

19    regarding its facility and return policy are false, misleading, and deceptive

20    as set forth more fully above.

21

23

175.　At the time it made and disseminated the statements alleged herein, Cash4Gold knew or should have known that the statements were untrue, deceptive, or misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.

176.　Cash4Gold actively concealed its knowledge that checks were mailed well after the date that they were issued so that customers would not have the full 12-day return period to request return of their items.

177.　Cash4Gold's acts of untrue and misleading advertising present a continuing threat to consumers because such advertisements induced consumers to participate in its services, which are then operated under false pretenses.

178.　As a result of the violations of California law described above, Cash4Gold has been and will continue to be unjustly enriched at the expense of Plaintiffs and the members of the Class. Specifically, Cash4Gold has been unjustly enriched by receipt of thousands of dollars in gold received from customers who mailed in their jewelry from the State of California and the United States according to material misrepresentations regarding the services provided by Cash4Gold.

1    179. As a result of the violations of California law described above,

2    Plaintiffs and the members of the Class have suffered injury in fact and

3    have lost money.

4    180. Plaintiffs seek restitution, injunctive relief, and all other relief

5    allowable under Bus. & Prof. Code §§ 17535 et seq.

6    **FOURTEENTH CLAIM FOR RELIEF**
**(Violations of Cal. Civil Code § 1573)**

7    181. Plaintiffs repeat and reallege the allegations contained in

8
9    paragraphs 1 through 179 of this Complaint as if fully set forth herein.

10    182. Plaintiffs brings this claim individually and on behalf of the

11    Class against Cash4Gold.

12    183. Cal. Civ. Code § 1573(1) provides in relevant part that

13    "[c]onstructive fraud consists . . . [i]n any breach of duty which, without an

14    actually fraudulent intent, gains an advantage . . . by misleading another to

15    his prejudice . . ."

16    184. Cash4Gold has violated and continues to violate Civ. Code §

17    1573(1) by neglecting to inform Plaintiffs and the members of the Class of

18    the fact that Cash4Gold's systematically mails in checks well after the date

19    that they are issued to preclude customers from participating in the

20    Company's publicized 12-day return policy. These actions constituted

21    CLASS ACTION COMPLAINT                                                57
SW
22

23

constructive fraud because they gave Cash4Gold an unfair advantage, achieved by unfair means, over Plaintiffs and the members of the Class.

185.  As a direct and proximate result of Cash4Gold's constructive fraud, Plaintiffs and the members of the Class have and will continue to suffer damages.

186.  Plaintiffs seek damages against Cash4Gold including but not limited to disgorgement of all proceeds Cash4Gold obtained from the transactions entered into with Plaintiffs and the members of the Class as well as pre-judgment interests and costs.

### FIFTEENTH CLAIM FOR RELIEF
#### (Violations of 18 U.S.C. § 1962(c))

187.  Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 185 of this Complaint as if fully set forth herein.

188.  Plaintiffs bring this claim individually and on behalf of the Class against Defendants.

189.  Defendants have acted in violation of RICO, 18 U.S.C. § 1962(c) to the detriment of Plaintiffs and members of the Class.

190.  At all times relevant to this Complaint, each Defendant was a "person" within the meaning of 18 U.S.C. § 1961(3).

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

191. At all times relevant to this Complaint, Cash4Gold had an ongoing business relationship with Plaintiffs and members of the Class, whereby it promised services to receive jewelry in exchange for cash and a 12-day return policy if customers were dissatisfied with the Company's evaluation of their jewelry.

192. This ongoing business relationship, along with the relationship between Cash4Gold its advertising agencies and television broadcasters, and Does, whereby the agencies and broadcasters disseminated the messages of Cash4Gold constituted an "association in fact" enterprise within the meaning 18 U.S.C. § 1961(4) that was engaged in, or the activities of which affected, interstate or foreign commerce (the "Enterprise").

193. The members of the Enterprise had defined roles, and the enterprises as a whole had ongoing existences, structures, and hierarchies.

194. As set forth more fully above, Defendants corrupted the Enterprise and caused Plaintiffs and members of the Class damages through a pattern of racketeering activity. At all times relevant to this Complaint, each Defendant was a person associated with the Enterprise and conducted or participated, directly or indirectly, in the operation and management of the Enterprise through a pattern of racketeering activity

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    within the meaning of 18 U.S.C. § 1981(1) and (5) and § 1962. This pattern

2    of racketeering activity entailed at least two acts of racketeering activity by

3    Defendants, at least one of which occurred within ten years after the

4    commission of a prior act of racketeering activity.

5        195. The aforementioned pattern of racketeering consisted of a

6    multitude of acts that are indictable under, inter alia, 18 U.S.C. §§ 1341,

7    1343, and 1346 and are within the scope of 18 U.S.C. 1961(1)(A) and (1)(B).

8    As set out more fully herein, the commission of those related predicate acts

9    over the period of time alleged constituted a continuous and related pattern

10   of racketeering activity as defined in 18 U.S.C. § 1961(1) and (5).

11

12       196. As part of and in furtherance of the fraudulent schemes and

13   artifices described in detail herein, Defendants made repeated use of, or had

14   reason to believe that others would use, the U.S. Postal Service, interstate

15   overnight couriers, and the interstate wires to transmit various documents,

16   information, and items including, inter alia, websites, images, terms and

17   conditions, and the jewelry itself (the "Transmissions").

18       197. Each Transmission constituted either the transmittal by means

19   of wire communication in interstate commerce of signals, sounds, or

20   writings; the use of the U.S. Postal Service; or the use of interstate overnight

21

23

couriers for the purpose of executing or in connection with the aforementioned schemes and artifices to defraud. Defendants knew or had reason to believe that these Transmissions were in furtherance of executing the aforementioned schemes or artifices or were incidental to an essential part of these schemes or artifices.

198. Defendants made or caused these Transmissions to be made with the specific intent of defrauding Plaintiffs, the members of the Class, and others. Each of these Transmissions furthered the aforementioned schemes and artifices to defraud, which were intended to and did proximately cause injury to Plaintiffs, the members of the Class, and others in their business and property through shill bidding auctions and deprived Plaintiffs and the members of the Class of the intangible right to honest services with those they engaged in business with. Those acts constituted offenses indictable as crimes under, inter alia, the "mail fraud" and "wire fraud" statutes, 18 U.S.C. §§ 1341, 1343, and 1346.

199. Plaintiffs and the members of the Class reasonably relied upon the written statements made to them by Cash4Gold in connection with the aforementioned schemes or artifices to defraud. In addition to mail and wire fraud, Defendants knowingly executed a scheme to defraud one or

more financial institutions, as described above, in violation of 18 U.S.C. § 1344.

200. Defendants knowingly transported or caused to be transported in excess of $5,000 or goods or money, in the form of gold or money derived from the sale of such gold, which it knew had been obtained either as a result of a scheme to defraud or by theft, in violation of 18 U.S.C. § 2314.

201. Defendants stole or unlawfully took away, or by fraud or deception obtained, goods in the form of jewelry from transportation which was travelling across state lines, and part of an interstate shipment, with the intent to convert such goods to their own use, in violation of 18 U.S.C. § 659.

202. Each abovementioned violations of 18 U.S.C. § 659, 1344, and 2314 constituted a predicate act which, taken together, constituted a continuous and related pattern of racketeering activity as defined in 18 U.S.C. § 1961(1) and (5) which proximately caused, and was intended to cause, harm to the property of Plaintiffs and members of the Class.

203. As a direct and proximate result of the foregoing pattern of racketeering, Plaintiffs and the members of the Class have suffered damage to their businesses and property and are entitled to receive treble the

damages that they have suffered due to Defendants' violations of 18 U.S.C.

§ 1962(c).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Court enter judgment against

Cash4Gold as follows:

(a)    an order certifying the Class, and appointing Plaintiffs and their

undersigned counsel of record to represent the Class;

(b)    a permanent injunction enjoining Cash4Gold, any partners, joint

ventures, subsidiaries, agents, servants, and employees, and all persons

acting under, in concert with Cash4Gold directly or indirectly, or in any

manner, form in any way engaging in the practices set forth herein;

(c)    a permanent injunction enjoining Cash4Gold, any partners, joint

ventures, subsidiaries, agents, servants, and employees, and all persons

acting under, in concert with Cash4Gold directly or indirectly, or in any

manner, form utilizing any monies acquired by Cash4Gold's unfair

business practices, including all profits, revenues, and proceeds both direct

and indirect;

(d)    imposition of a constructive trust upon all monies and assets

Defendant has acquired as a result of unfair practices;

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1        (e)     compensatory damages and full restitution of all funds acquired

2  from Cash4Gold's unfair business practices, including disgorgement of

3  profits;

4        (f)     actual damages suffered by Plaintiffs and Class members;

5        (g)     trebling of all damages awarded under 18 U.S.C. § 1962(c);

6        (h)     punitive damages, to be awarded to Plaintiffs and each Class

7  member;

8        (i)     costs of suit herein;

9        (j)     investigative costs;

10       (k)     both pre- and post-judgment interest on any amounts awarded;

11       (l)     payment of reasonable attorneys' fees;

12       (m)    declaratory relief; and

13       (n)     such other and further relief as the Court may deem just and

14  proper.

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

1    (n)    such other and further relief as the Court may deem just and

2    proper.

3                                 **JURY DEMAND**

4    Plaintiffs demand trial by jury on all issues so triable.

5

6

7    Dated: October 6, 2009
          Los Angeles, California

                                        Joseph Ferrucci

8                                       Joseph A. Ferrucci (186287)
                                        Email: jferrucci@bc-llp.com
                                        **BROWN AND CHARBONNEAU LLP**

9                                       420 Exchange, Suite 270
                                        Irvine, CA 92602

10                                      Telephone: (714) 505-3000
                                        Facsimile: (714) 505-3070
                                        *Liaison Attorneys for Plaintiff and Class*

11

12

13

14

15

16

17

18

19

20   *Pro Hac Vice* application pending
     **Admission to the New York Bar pending.

21

CLASS ACTION COMPLAINT
SW                                      64

22

23